UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO CURIEL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: ED CV 13-1412-PJW<br><br>MEMORANDUM OPINION AND ORDER |

### I.　INTRODUCTION

　　Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred when he determined that Plaintiff could work. For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

### II.　SUMMARY OF PROCEEDINGS

　　In December 2010, Plaintiff applied for SSI, alleging that he had been disabled since birth due to a learning disability,

autism, attention deficit disorder, and depression. (Administrative Record ("AR") 142-43, 171.)  The Agency denied the application initially and on reconsideration.  Plaintiff then requested and was granted a hearing before an ALJ.  (AR 77-140.)  On April 26, 2012, he appeared with counsel and testified at the hearing.  (AR 25-59.)  The ALJ subsequently issued a decision denying benefits.  (AR 13-21.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-7.)  He then commenced this action.

### III.   ANALYSIS

1. <u>Listing 12.05(c)</u>

Plaintiff claims that the ALJ erred when he concluded that Plaintiff did not meet the requirements for Listing 12.05(c). For the following reasons, the Court finds that there is no merit to this argument.

Listing 12.05(c), which relates to mental retardation, requires a valid verbal, performance, or full scale IQ score between 60 and 70 before age 22 plus a physical or mental impairment causing significant work-related limitation or function.  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.05(c).  The record establishes that Plaintiff's IQ was tested twice, in January 2004 and February 2011.  In January 2004, when Plaintiff was 18 years old, his full scale IQ score was 83, his verbal IQ score was 82, and his performance IQ score was 86. (AR 217.)  In February 2011, when he was 25 years old, his full scale score was 72 and his verbal score was 89.  (AR 248.)  He did not receive a performance score in 2011.  (AR 248.)  Thus, the ALJ did not err in concluding that Plaintiff did not meet

Listing 12.05(c) because Plaintiff failed to establish that he had a verbal, performance, or full scale IQ score below 70, which he was required to do.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); and *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (explaining claimant has burden of proving impairment meets criteria for Listing).

Plaintiff argues, it seems, that the 2011 scores for working memory (63) and processing speed (65) are performance scores and, therefore, should have been relied on by the ALJ to find that Plaintiff met the Listing.  (Joint Stip. at 6.)  The Court disagrees.  Plaintiff's sub-70 scores in working memory and processing speed are not performance scores, nor has Plaintiff cited any authority for the proposition that they are.  The only performance score in the medical records is the one from 2004, an 86.

Further, even assuming that the 2011 scores were performance scores, Plaintiff would still have not succeeded in establishing that he met the requirements of Listing 12.05(c) because he was 25 when those tests were administered in 2011 (AR 245) and Listing 12.05(c) requires a claimant to establish that the onset of his impairment occurred before he turned 22 years old.  20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.05(c).  Plaintiff's sub-70 scores more than three years after he turned 22 do not accomplish that, especially where, as here,

his pre-age-22-scores show that he was operating well above the 70 threshold. Because Plaintiff did not establish that he had a performance score below 70 prior to his 22nd birthday, the ALJ did not err in concluding that he did not meet Listing 12.05(c).[1]

### 2. The ALJ's Rejection of Treating Doctor Inderjit Seehrai's Opinion

In April 2012, Plaintiff's treating psychiatrist Inderjit Seehrai diagnosed him with "Adult ADD" and Tourette's syndrome. (AR 293.) Dr. Seehrai opined, among other things, that, as a result of Plaintiff's mental/psychological impairments, he would miss work more than four days a month and was seriously limited or unable to meet competitive standards in all of the functional areas listed on the Mental Residual Functional Capacity Questionnaire that he filled out.[2] (AR 293-98.) The ALJ rejected Dr. Seehrai's opinion because he found that it was not supported by the objective medical evidence and because it related to an issue that was reserved to the Agency, i.e., whether Plaintiff could work. (AR 19.) Plaintiff contends that

---

[1] The Court notes that, just last week, the Ninth Circuit issued an opinion in *Garcia v. Comm'r Soc. Sec.*, __F.3d ___, 2014 WL 4694798, (9th Cir. Sept. 23, 2014), in which it reversed the Agency because the ALJ failed to obtain a performance score. The Court finds that case distinguishable, though, because here there was a valid performance score.

[2] In another form Dr. Seehrai prepared in 2011, he offered that Plaintiff suffered from Tourette's syndrome, opioid dependence, and major depressive disorder, recurrent, severe with psychotic features. (AR 268.) Presumably, by not including opioid dependence and major depressive disorder in the 2012 opinion, Dr. Seehrai was signaling that he believed that Plaintiff no longer suffered from those impairments.

the ALJ erred in doing so.  The Agency disagrees.  For the following reasons, the Court sides with Plaintiff.

ALJs are tasked with resolving conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Generally speaking, three types of doctors supply that evidence: treating doctors, examining doctors, and reviewing doctors.  All things being equal, treating doctors' are entitled to the greatest deference because they are hired to cure and have more of an opportunity to know and observe the patient.  *Id.* at 1041; *see also* 20 C.F.R. 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations").  Examining doctors are next on the list, followed by reviewing doctors.  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  ALJs, however, are not required to merely accept the opinion of any doctor and, where contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id*. at 830.

The first reason the ALJ cited for rejecting Dr. Seehrai's opinion was that it "was not supported by the objective medical evidence as discussed above."  (AR 19.)  As explained below, however, this is far too general of a finding to support the ALJ's decision to reject the treating doctor's opinion in this case.

The ALJ's summary conclusion leaves the Court without a roadmap as to what he was referring to when he determined that the objective medical evidence did not support the doctor's opinion. *See, e.g., Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (holding ALJ's reasons for rejecting doctor's opinion not clear and convincing where ALJ "merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects"). Further, the Court is hard-pressed to find any "objective evidence" in the pages leading up to the ALJ's conclusion. Instead, the vast majority of the evidence discussed in the decision appears to be completely subjective evidence. It consists, for example, of statements Plaintiff made to the Agency or his doctors about his conditions and the doctors' diagnoses based on those statements. (AR 15-19.) There is no objective testing to speak of. Though the ALJ does discuss the results of Plaintiff's IQ tests--and the Court presumes that an IQ test is objective evidence—-it does not appear that there is any connection between the IQ test results and Plaintiff's alleged inability to work as a result of ADD and/or Tourette's syndrome as, presumably, these ailments do not significantly impact a person's IQ. Thus, the Court rejects the ALJ's finding that Dr. Seehrai's opinion should be discounted because it is not supported by the objective medical evidence.[3]

---

[3] The ALJ also discussed Plaintiff's 2007 GAF score of 50. (AR 19.) A GAF score is a clinician's snapshot assessment of a patient's condition. A GAF of 50 means that the patient suffers from serious symptoms or a serious impairment in social,

The ALJ's second reason for rejecting Dr. Seehrai's opinion was that it went to the ultimate issue of disability, which, as the ALJ noted, is reserved for the Agency. (AR 19.) Though the Court would agree that the issue of disability is an administrative question, it does not see where Dr. Seehrai offered an opinion on disability. Rather, it appears that he simply answered questions on the preprinted forms that he used and checked the applicable boxes to communicate what he believed were Plaintiff's limitations as a result of his condition. For example, he predicted that Plaintiff would miss four days of work each month. (AR 298.) Because Dr. Seehrai did not offer an opinion on disability, the ALJ's reliance on this reason to reject his opinion is overruled.

Further, even assuming that Dr. Seehrai had offered an opinion on disability, the ALJ was not at liberty to simply disregard his entire opinion for that reason. *See Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007) (explaining, even if treating doctor's opinion is not entitled to controlling weight, it must still be considered by ALJ); *see also Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001) (holding treating doctor's controverted opinion on ultimate issue of disability must be credited unless it can be rejected for specific and legitimate reasons).

In the end, the Court concludes that neither of the ALJ's reasons for rejecting Dr. Seehrai's opinion is supported by the

---

occupational, or school functioning. DSM-IV-TR (4th Ed.) at 34. To the extent that the ALJ considered this objective evidence, it would seem to support Dr. Seehrai's opinion, not undermine it.

7

evidence or the law.  The Court further finds that the error was not harmless because, if the ALJ had accepted Dr. Seehrai's opinion, he would have concluded that Plaintiff was disabled. For this reason, the Court remands the case to the Agency for further consideration of this issue.

    3. <u>The ALJ's Credibility Determination</u>

    The ALJ determined that Plaintiff's testimony that he was incapable of working was not credible.  Plaintiff takes exception to this finding.  For the following reasons, the Court concludes that the ALJ erred.

    ALJs are responsible for judging the credibility of the witnesses, including the claimants.  In making these credibility determinations, they may rely on ordinary credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Where a claimant has produced medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, however, the ALJ can only reject the testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

    The first reason the ALJ gave for questioning Plaintiff's credibility was the fact that he could perform various activities, like going to the bookstore, using a computer, performing household chores, and caring for his personal hygiene.  (AR 17.)  According to the ALJ, "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those

necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." (AR 17.)

A claimant's ability to perform daily activities in excess of his claimed capabilities is a legitimate reason for questioning his testimony that he is disabled. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (explaining ALJ may consider claimant's ability to perform daily activities in assessing credibility). But the ALJ failed to explain how Plaintiff's ability to perform these activities suggested that he could hold down a 40-hour a week job, which the ALJ was required to do. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding ALJ errs in failing to explain how ability to perform daily activities translated into ability to perform work). His general conclusion that some of the abilities needed to perform some of these activities carried over to some of the skills necessary to work is rejected. The ALJ was required to be more specific. Further, the Court is at a loss to see how Plaintiff's ability to listen to music on a computer, look at photography books, and brush his teeth undermines his testimony that he is unable to work full-time because he tends to be nervous and anxious around people. *See, e.g., Orn*, 495 F.3d at 639 (concluding that watching television is an activity that is "so undemanding that [it] cannot be said to bear a meaningful relationship to the activities of the workplace."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

The ALJ also found that Plaintiff's ability to attend college was incompatible with his claim that he had difficulty concentrating. (AR 18.) This might be a good reason to question Plaintiff's testimony but the record is unclear as to his schooling. To begin with, there is a question as to whether he graduated from high school or merely received a certificate of completion (apparently awarded to special education students). (AR 34, 42-43, 46-47, 49-50.) This confusion could easily be resolved by obtaining his high school records.

As to college, the record is equally murky. It is unclear how many classes Plaintiff took or was taking, whether those classes were special education classes, and whether he was passing any of them. (AR 33-34, 43-44, 50-51.) Again, simply obtaining the college records would go a long way towards setting the record straight. This would also help resolve the obvious incongruity between Plaintiff's 2004 full scale IQ score of 83 and his inability to pass the written driving test. (AR 31, 217.)

In the end, the Court finds that both of the reasons cited by the ALJ for questioning Plaintiff's testimony are not supported by the evidence and, for that reason, this issue, too, is remanded for further consideration.

D.   The ALJ's Step Five Finding

The ALJ concluded that Plaintiff could perform jobs rated in the Dictionary of Occupational Titles (DOT) as SVP-2 jobs

despite his limitations. In Plaintiff's view, these jobs involve more than two-step instructions, which, according to the consultative examiner, Plaintiff could not perform.

The Court does not find Plaintiff's argument persuasive. To begin with, SVP-2 jobs do not necessarily require more than two steps; they require a month of experience to learn them. See DOT App. C. Further, the jobs that the vocational expert identified and the ALJ accepted require Reasoning Level 1, which involves one- and two-step instructions. 20 C.F.R. § 416.968(a). And, finally, even if they involved more steps, the ALJ did not adopt the consultative examiner's view that Plaintiff was limited to jobs involving no more than two steps. (AR 53-54.) That being said, the ALJ will likely have to revisit this issue on remand and the Court will leave it to him to determine how best to address it.

## IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.[4]

IT IS SO ORDERED.

DATED: October 3, 2014

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\CURIEL, 1412\Memorandum Opinion and Order.docx

---

[4] Plaintiff has requested that the Court remand the case to the Agency for an award of benefits. The Court recognizes that it has the authority to do so but finds that this case does not warrant such relief because it is not clear from the record that Plaintiff is disabled and/or entitled to benefits.

11